ELNA REALTY Co., INC., and Others, Respondents, *v.* MAMAQUARRO APARTMENTS CORPORATION and Others, Appellants.*

Second Department, December 11, 1931.

*Alfred M. Bailey* [*John J. Dillon* with him on the brief], for the appellants.

*Frederick E. Weeks* [*Frederick E. Weeks, Jr.,* with him on the brief], for the respondents.

KAPPER, J. Defendants moved under rule 107, subdivision 5, of the Rules of Civil Practice, to dismiss the complaint upon the ground that "there is an existing final judgment or decree of a court of competent jurisdiction rendered on the merits, determining the same cause of action between the parties."

On December 4, 1928, the corporate parties, plaintiff and defendant, entered into a contract for the exchange of real property. The property owned by the defendant corporation, hereinafter referred to as "Mamaquarro," was valued at $300,000, mortgaged for $147,000, leaving an equity of $153,000. The property of plaintiff corporation, hereinafter called "Elna," consisting of eight houses, was valued at $236,000, with mortgages thereon of $176,000,

---

* See, also, 142 Misc. 599.

leaving an equity of $60,000. The difference in equities was $93,000, and it was agreed to give " Mamaquarro " a purchase-money mortgage for $68,000 and the cash sum of $25,000 to make up the $93,000. Of the $176,000 of mortgages on the property of " Elna," $45,000, or $5,625 on each of the eight houses, constituted second mortgages, and upon the bonds accompanying these mortgages the individual plaintiffs, Israel Robinowitz and Lena F. Robinowitz, his wife (who compose the plaintiff corporation), were personally obligated. After the exchange was consummated by the deeding of the respective properties, the holder of the eight second mortgages foreclosed, and deficiency judgments aggregating $22,562 were entered November 1, 1929, against the plaintiffs, both corporate and individual.

On July 31, 1929, the plaintiffs brought an action against Mamaquarro in which they sought a *reformation* of the contract so as to provide that that defendant had obligated itself to *assume* the payment of the second mortgages. The prayer for relief also asked that should the premises conveyed to Mamaquarro be sold in foreclosure actions " now pending " and should there result a deficiency judgment against the plaintiffs, the amount of such deficiency be deducted from said $65,000 purchase-money mortgage given as a part of the consideration for the exchange. It was further sought by the prayer for relief that if it should be determined that plaintiffs were not entitled to reformation, rescission of the contract be decreed, provided the defendant corporation, at the time of entry of judgment, is in a position to return the premises to the corporation. The last-mentioned relief sought was unavailable because judgment in that action was directed by findings made on April 4, 1931, by Mr. Justice MORSCHAUSER, who heard and determined the action upon the merits.

The theory of that action was, according to the allegations of the complaint, that the defendant corporation, through its president and secretary, orally stated that the $25,000 cash payment on the exchange " would be at once utilized by the defendant in connection with the refinancing of the mortgages [the second mortgages] * * * which, when done, would relieve the plaintiffs from any and all further responsibility with regard to the payment of the eight mortgages;" that the plaintiffs were " *induced* " to enter into the agreement of exchange upon such assurances, and that they " *assumed* " that the agreement which they signed contained appropriate provisions for the carrying out of the defendant's agreement to assume the payment of the mortgages, and that defendant's said officers " *advised* " the individual plaintiffs that the contract contained the promise. It was further alleged that

the failure of the contract to set forth the defendant's promise was the result of either mutual mistake or of fraud upon the part of defendant and its said officers " in misleading the plaintiffs by their representations and assurances that plaintiffs' ' Exhibit C ' [a binder made a part of the contract of exchange] contained such a provision that would so obligate the defendant to pay, when the same fell due, the mortgages that were upon the property so conveyed to the defendant."

Among the findings made by Mr. Justice MORSCHAUSER is the following:

" 20. That at the time of the making of said formal agreement of exchange of properties, dated December 4, 1928, there was no verbal discussion, agreement, understanding or promise that the defendant Mamaquarro Apartments Corporation would assume the payment of the second mortgages then a lien on the premises owned by plaintiff Elna Realty Co., Inc., nor that it would use the $25,000 to be paid to it in cash by plaintiff Elna Realty Co., Inc., at the closing of title, to a reduction or liquidation of said second mortgages then a lien on the premises owned by the plaintiff Elna Realty Co., Inc., nor that it would relieve the plaintiff Elna Realty Co., Inc., Israel Robinowitz and Lena F. Robinowitz, or any of them, from any and all liability or responsibility in connection with the payment of the second mortgages then a lien on the premises owned by plaintiff Elna Realty Co., Inc., but that on the contrary said agreement dated December 4, 1928, contained the whole agreement between the parties thereto and expressly provided that defendant Mamaquarro Apartments Corporation should take title to the premises consisting of eight parcels of land with the buildings thereon, then owned by the plaintiff Elna Realty Co., Inc., subject to the first and second mortgages then a lien thereon, aggregating together the sum of $173,000, and that plaintiff Elna Realty Co., Inc., would take title to the premises consisting of land with an apartment house thereon, then owned by defendant Mamaquarro Apartments Corporation, subject to a mortgage then a lien thereon in the sum of $147,000."

The learned justice also found as a conclusion of law:

" 7. That never at any time was any agreement made between the plaintiffs and the defendant, either oral or written, that the defendant would apply $25,000 of the purchase price to the liquidation or reduction or payment of the second mortgages which were a lien on the Harding Avenue property."

The judgment which was thereupon entered adjudged that the written agreement " contained the entire agreement made between said parties on said date   *   *   *   that there was no other agree-

ment, verbal or written, in existence at the time of the delivery of said deed;" and that " there was no mistake, mutual or otherwise, and no fraud on one side and mistake on the other, in connection with the wording " of the agreement, " nor was there any clause, or provision, or statement, or agreement of any kind whatsoever omitted from any one of said instruments [the binder and contract of exchange] by mutual mistake of the parties thereto or otherwise."

A new action has now been begun by the plaintiffs against the corporate defendant, including its said officers, in which the relief sought is the recovery of the sum of $22,562, the amount of deficiency which the plaintiffs paid. This complaint alleges, as did the one in the former action, that the defendant corporation, through its said officers, stated that the $25,000 cash given on the exchange of the properties " would be at once utilized " by the defendant corporation in connection with the refinancing of the second mortgages, and that said corporate defendant would supply the money for that purpose, " which when done, would relieve the plaintiffs from any and all further responsibility with regard to the payment of the eight mortgages." The addition to these allegations is that the statements so made by the defendant's officers were " fraudulently stated and represented;" and that the plaintiffs " believing said representations to be true and relying upon the same, were thereby *induced* to execute the agreement of exchange."

Plaintiffs contend, and it was so held by the learned Special Term, that the causes of action in the two suits " are not the same " in that the first was an action for reformation while the second is an action for damages for deceit; and hence the plea of former adjudication is unavailable. The difficulty I find with the argument is that the identical words alleged to have induced the plaintiffs to enter into the contract of exchange are the same as those upon which they predicated their action for reformation; and the finding of the court in the first action is that there never was any such statement or promise. The learned Special Term in denying the motion stated that the court on the trial of the first action " might have found that there was no mistake which entitled the plaintiffs to the remedy of reformation, without at all passing on the question whether there was any representation which induced the contract," and he added that " If the latter question of fact was passed upon, it would probably be obiter, as unnecessary to the decision." This view seems to me to ignore the allegations of the complaint in the first action and the findings made upon the trial in that action. The charge was there made, as already pointed out, that the failure of the agreement to recite the promise of the defendant and its officers resulted from mutual mistake or

fraud upon the part of the defendant and its said officers in misleading plaintiff by assurances that the contract of exchange contained the provision which would obligate the defendant corporation to pay the second mortgages when they fell due. The findings, as pointed out, hold that at no time was there any such statement made or any understanding or promise to utilize the $25,000 cash payment toward the cancellation of any obligation which the individual plaintiffs were under in regard to the second mortgages. The issue in the second action is the promise to apply the $25,000 toward the discharge of the second mortgages and save the plaintiffs harmless from their liability on the bonds. This promise was the very heart of the first case, and its existence was necessary to be there determined, constituting the alleged oral agreement which was not carried into the contract of exchange. "A judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first." (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304, 306.) And it was further said in the case last cited (p. 308): "The decisive test is this, whether the substance of the rights or interests established in the first action will be destroyed or impaired by the prosecution of the second. An estoppel is not avoided in such circumstances by mere differences of form between the one action and the other."

What the first action established was that there never was any promise or agreement to devote the $25,000 cash payment to the discharge in whole or in part of the second mortgages. The refusal to reform the agreement of exchange was predicated upon the finding of fact that no such promise ever was made. The present effort to segregate the alleged independent promise and make it the basis for a claim of matter of inducement is, nevertheless, despite the change of form, in substance a repetition of the same claim made in the former action although the relief sought may be different. It seems to me there was a distinct election of remedies pursued to judgment by plaintiffs, and what was done constituted, in my opinion, "a choice, shown by an overt act, between two inconsistent rights," the assertion of either of which was at the will of the plaintiffs alone. (*Schenck* v. *State Line Telephone Co.*, 238 N. Y. 308, 311.) The plaintiffs did not resort "to a remedy withheld," in which case they would have had "recourse thereafter to the remedy allowed" (*Schenck Case, supra*). They decided to reform the agreement so as to incorporate what they claimed was represented and promised. They asked in the alternative for a

rescission based upon the defendants' fraud if that remedy would not be rendered unavailable by a previous judicial sale in fore-closure of the mortgages in question. Having failed in their chosen remedy, which would have been ample and fruitful if they had possessed the requisite facts, their present change of base ought not to be countenanced if there is to be durability in the determina-tion of litigation.

The order denying the motion for judgment dismissing the com-plaint under rule 107 of the Rules of Civil Practice should be reversed upon the law and the facts, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

LAZANSKY, P. J., HAGARTY, TOMPKINS and DAVIS, JJ., concur.

Order denying motion for judgment dismissing the complaint under rule 107 of the Rules of Civil Practice reversed upon the law and the facts, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.